UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIAM WOLTER,

                Plaintiff,                         Case No. 1:22-CV-63

v.                                     Honorable Robert J. Jonker

JOHN CHRISTIANSEN,

                Defendant.

_____/

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner William Wolter is incarcerated with the Michigan Department of Corrections at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan. On May 10, 2018, Petitioner pleaded *nolo contendere* in the Calhoun County Circuit Court to two counts of third-degree criminal sexual conduct (CSC-III), in violation of Mich. Comp. Laws § 750.520d— one count in Case No. 2017-000336-FC and one count in Case No. 2017-000337-FC—and one count of assault with intent to do great bodily harm less than murder (AGBH), in violation of Mich. Comp. Laws § 750.84, in Case No. 2017-002497-FC. On July 9, 2018, the court sentenced Petitioner to concurrent prison terms of 14 years to 22 years, 6 months for each CSC-III conviction, and 10 to 15 years for the AGBH conviction.

On January 19, 2022, Petitioner filed his habeas corpus petition raising eleven grounds for relief, as follows:

    I.      Due process requires that a plea be knowingly given where it results in a conviction. In this case, the parties expressly agreed upon sentence. Where the trial court unilaterally concluded that defendant violated the terms of his pretrial release without a hearing was due process violated?

II.     Offense Variable 3 is established by MCL 777.33 and requires by its express terms a preponderance of evidence to show life threatening or permanent incapacitating injury. Recognized interpretations require an assessment of the injuries and not an assessment of the defendant's conduct. Where the presentence investigation report and the record failed to establish any life threatening or permanent incapacitating injury, did the trial court err by assessing 25 points for Offense Variable 3.

III.    Offense Variable 4 is established by MCL 777.34 and requires by its express terms a preponderance of evidence to show "serious psychological injury requiring professional treatment occurred to a victim." Recognized interpretations require a preponderance of the evidence to show serious injury, not just any psychological injury. Where the presentence investigation report and the record failed to establish any psychological injury, did the trial court err by assessing 10 points for Offense Variable Four.

IV.    Offense Variable 7 is established by MCL 777.37 and requires by its express terms that various identified types of conduct be committed for express purposes during an offense. Where the record fails to address the specific elements of the variable and no evidence as to Mr. Wolter's specific intent was produced, the trial court erred by assessing 10 points for Offense Variable 7.

V.     Offense Variable 8 is established by MCL 777.38 and requires by its express terms that a victim be transported to a place of greater danger or held captive longer than necessary for the crime. Interpretations require that the movement have some connection to the offense. Where the victim asked for a ride and voluntarily entered Mr. Wolter's truck, did the trial court err by assessing 15 points for Offense Variable Eight.

VI.    Offense Variable 10 is established by MCL 777.40 and requires by its express terms that predatory conduct exist that exploited a vulnerability of a victim in the course of the offense. Where the conclusion of predatory conduct or a vulnerable victim were based on speculation, a preponderance of the evidence was not established and the trial court erred by assessing points for OV 10.

VII.   Offense Variable 12 is established by MCL 777.42 and requires by its express terms the existence of three or more conte[]mporaneous felonious criminal acts involving crimes against a person. Where the PSI indicates that the same assault in dismissed count 1 and a non-existen[t] count 3 were the basis for the score, the trial court erred by assessing 25 points for OV 12.

VIII.  Offense Variable 17 is established by MCL 777.47 but scoring of this variable for an offense against a person is precluded by MCL 777.22. The

2

trial court read the instructions for OV 17 and concluded that it applied without considering MCL 777.22. Where the trial court disregarded express statutory language, the trial court erred by assessing 10 points for Offense Variable Seventeen.

IX.    The Sixth Amendment right to counsel includes a requirement that counsel perform effectively. Counsel must, at a minimum, assist the defendant with presenting a defense. Where trial counsel failed to object to Mr. Wolter's statements on the record regarding the alleged bond violation, Mr. Wolter was denied the effective assistance of counsel.

X.     The Court failed to provide procedural due process when it allowed an unconfirmed urine test result to go outside the *Cobbs* agreement.

XI.    The court allow[ed] a sentence enhancement to stand even though the prosecutor failed to comply with MCL 769.13(1)(2).

(Pet., ECF No. 1, PageID.6–21.) Respondent has filed an answer to the petition (ECF No. 9) stating that the grounds should be denied because they are without merit.[1] For the following reasons, the Court agrees. Because Petitioner has failed to set forth any meritorious federal ground for habeas relief, the Court will deny his petition for writ of habeas corpus.

---

[1] Respondent also contends that Petitioner's Ground X is procedurally defaulted. (ECF No. 9, PageID.587–91.) Many of Petitioner's other claims are also unexhausted. However, a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claim.

## Discussion

### I.      Factual Background

This matter arises out of Petitioner's convictions in three separate cases before the Calhoun County Circuit Court. In Circuit Court Case No. 17-336-FC, Petitioner was charged with one count of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and one count of CSC-III, as a second habitual offender, in violation of Mich. Comp. Laws § 769.10. (Reg. of Actions I, ECF No. 10-1, PageID.614.) In Case No. 17-337-FC, Petitioner was charged with three counts of CSC-I and one count of CSC-III, also as a second habitual offender. (Reg. of Actions II, ECF No. 10-2, PageID.632.) Finally, in Case No. 17-2497-FC, Petitioner was charged as a second habitual offender with one count of assault with intent to commit murder, in violation of Mich. Comp. Laws § 750.83, and one count of AGBH. (Reg. of Actions III, ECF No. 10-3, PageID.649.)

The week before Petitioner's scheduled trial date, the parties reached an agreement in which Petitioner would enter pleas of no contest to three offenses: one count of CSC-III in Case No. 17-336-FC, one count of CSC-III in Case No. 17-337-FC, and one count of AGBH in Case No. 17-2497-FC, all as a second habitual offender, to be capped at 8-1/2 years, in exchange for the dismissal of the remaining charges. (5/10/2018 Plea Hr'g Tr., ECF No. 10-8, PageID.909–12.) During the plea hearing, Petitioner was placed under oath, affirming that he understood the terms of the plea agreement (*id.*, PageID.914), and understood that each charge of CSC-III, as a second habitual offender, carries with it a penalty of up to 22-1/2 years in prison, and that the charge of AGBH carries with it a maximum penalty of 15 years in prison as enhanced by Petitioner's status as a second habitual offender (*id.*, PageID.915–16). Petitioner pleaded no contest to each, acknowledging that his no-contest plea would have the same effect as a guilty plea. (*Id.*, PageID.916.) Petitioner testified that it was his choice to enter the plea because of potential civil

4

liability and that no one had threatened him or coerced him into entering the plea. (*Id.*, PageID.917.)

In support of the factual basis for the pleas, the parties stipulated to the following:

With respect to 17-336-FC and 17-337-FC the facts would be in the summer of 2016 in Albion Township here in Calhoun County over off of 25 ½ Mile Road, that there were two young ladies both between 13 and 15 as the Court is well aware of from the first trial had gone over and stayed with the defendant in this particular case, and over the course of that particular summer the victim on [17-337, J.E.] had been there, had had alcohol and drugs furnished to her. Her sister who would be on the companion case of the 336-FC L.S. had came to visit and had indicated that she had saw the defendant on top of her sister unclothed and had assumed that they were having penis to vagina sexual intercourse. Further, she had indicated, that would be L.S. on the 336-FC file that while she was there she also had alcohol and drugs and that she had performed oral sex being penis to mouth with respect to her during the same time frame at that same venue.

Further, through additional evidence that had been presented at trial as well as other police reports in this particular matter it - - the defendant in this case had made statements to somebody in jail by the name of John Branham that he had in fact done something with the victim J.E. in 337-FC, that he had been with her and that he had concerns about whether or not they could test for [a] strand of chlaymdia [ s i c ] because if they had that he would be screwed. And, further, through all the investigation it appears that both the defendant and the victim J.E. both do have chlaymdia [sic], your Honor.  Again, in those particular cases there was penis to mouth to L.S. and there was penis to vagina to J.E. that happened over the summer of 2016 and they were between the ages of 13 and 15.

With respect to 17-2497, that date is on November 6th of 2014 that Ashley Graham was staying over at that same location 25 ½  Mile Road in Albion Township, Calhoun County, that while she was staying with the defendant that she did - - the police reports as well as the preliminary examination transcript would indicate she was with him, she did have a drug problem, that she was wanting to leave, that her and the defendant had gone out into a field and that she got out of the car, the lights were turned off and that he had ran her over. That then she was able to move and she got out of the way. He came back out for her later looking for her and that he ran her over several other times. She had significant injuries which were testified to at the preliminary examinations,  broken ribs, collapsed lungs, that she still has treatment that she is going through. That it was specifically at that point in time when you are running somebody over with a truck that that was great bodily harm - - intent to do great bodily harm or even intent to murder. But of course the plea agreement is assault with intent to do great bodily harm less than murder.

Further, with respect to the assault with intent to murder also there was a police report provided that indicates the defendant had made statements to Mr. Branham that he in fact had ran the lady over in the field. He made some other excuses but that was what he had told Mr. Branham.

Further, the defendant has been [previously] convicted of a home invasion second on December 7th, 2012 here in Calhoun County in the 37th Circuit Court.

(*Id.*, PageID.919–20.) The court accepted Petitioner's plea of no contest, finding it knowing, voluntary, and accurately given. (*Id.*, PageID.921.)

Petitioner requested and was permitted to remain out on bond between the time of his plea and sentencing. (*Id.*, PageID.921.) The court reminded Petitioner that he needed to follow all of the terms of his bond and that, if he did not, the court did not have to go along with the sentencing agreement. (*Id.*, PageID.922–23.) Petitioner responded that he understood. (*Id.*, PageID.922.) The court explained: "You got an 8-1/2 year agreement. But all of a sudden that could get a lot higher if I all of a sudden find out that you have been violating terms of your bond or you committed another crime or you didn't cooperate with the presentence report investigation. Do you understand that?" (*Id.*, PageID.923.) Again, Petitioner testified that he understood. (*Id.*) The amended order setting forth the conditions of Petitioner's bond, in place since December 13, 2017, provided, *inter alia*:

Defendant is prohibited from the use of alcohol and controlled substances unless prescribed by a physician except medical marijuana, which is prohibited on bond. Defendant must participate in controlled substance testing through the office of Community Corrections. *Any positive test will result in a revocation of bond*.

(12/13/17 Bond Ord., ECF No. 10-14, PageID.1041) (emphasis added).

Petitioner appeared for sentencing on July 9, 2018. (7/9/18 Sentencing Hr'g Tr., ECF No. 10-9, PageID.927.) Petitioner personally testified that he saw no corrections that needed to be made to the presentence investigation report other than that his grandmother was deceased. (*Id.*,

PageID.931–32.) However, the prosecution successfully argued to decrease the score of Offense Variable 2 to zero points. (*Id.*, PageID.932.)

After discussing the scoring of the Offense Variables, the prosecution and the judge raised the issue that Petitioner had tested positive for THC prior to the sentencing hearing. (*Id.*, PageID.937–38.) When the sentencing court informed defense counsel, defense counsel stated: "That's news to me, your Honor. And I just conversed with my client and he said he had not used. He had been around somebody who had used but that's all I know about it." (*Id.*, PageID.938.) The judge then asked Petitioner personally:

> The Court:       (Pause) Mr. Wolters, one of the -- Mr. Wolter, I'm sorry. One of the things I tell you to do at every plea taking is to abide by the terms and conditions of your bond. Do you remember that?
>
> Mr. Wolter:    Yes, I do.
>
> The Court:       And I tell people to realize they are going to get drug tested. Do you remember that?
>
> Mr. Wolter:    Yes. I never smoked. I'm not a smoker. I was around it. There's a guy living at our house that's got legal to have a card and I've never smoked it. I don't smoke.

(*Id.*, PageID.938–39.) Though Petitioner attempted to explain the positive test, he did not deny it. (*Id.*)

The court concluded that Petitioner knew the rules and violated those rules. (*Id.*, PageID.939–40.) It did not therefore abide by the sentencing agreement, but sentenced Petitioner to 10 to 15 years in prison for AGBH and 14 to 22-1/2 years for each conviction for CSC-III. (*Id.*, PageID.940–41.)

Petitioner subsequently moved to withdraw his plea, arguing that due process required that Petitioner be permitted a hearing on whether he had, in fact, violated the terms of his bond and that, if he did not violate the terms of his bond, he should be entitled to withdraw his plea. (8/6/2018

Motion Hr'g Tr., ECF No. 10-10, PageID.944, 947.) The circuit court denied Petitioner's motion, finding Petitioner's argument that he did not use but was simply around people who had used marijuana to be incredible. (*Id.*, PageID.952.) The trial court explained:

> The defendant was tested. I received a page, which the defendant can get a copy of, that indicated a positive test for THC specifically that was - - the parties were made aware of that at the sentencing hearing. And based upon 6.302(C) and cases that have ruled on that subsequently and very consistently, when someone violates the terms and conditions of their bond which I informed him and I reviewed actually the plea taking video or transcript, and it was very, very frank conversation with Mr. Wolter in which I wanted to make sure he understood exactly what I was saying.
>
> Then at the time of sentencing the defendant said, "I didn't use but I was around people who used." I've been a drug court judge now for almost ten years, well actually probably nine years, and I have heard a lot of it. A lot of excuses and a lot of explanations, a lot of made up stories. But either way the defendant said, "I was around people who used it. "It's his bond. He's the one that's got to comply with it. He knows what he's supposed to do and not supposed to do. If he's around people to the point where he's going to test positive the next day or hours later for THC he's either using directly or he's using second hand intentionally and it's his bond. He's responsible for those test results nobody else. So what he did violates[d] his bond. There's no requirement for a hearing at this point. We had a hearing, a sentencing hearing and he didn't abide by the terms and conditions of his bond which he was told to do und therefore he loses his agreement which he was told would happen...

(*Id.*, PageID.951-52.)

Petitioner then moved for resentencing (2/4/19 Motion Hr'g Tr., ECF No. 10-11, PageID.95), which was likewise denied, (2/12/19 Cir. Ct. Ord., ECF No. 10-14, PageID.1124).

On March 5, 2019, Petitioner filed a delayed application for leave to appeal. (Pet'r's Appeal Br., ECF No. 10-14, PageID.1000–38.) The Court of Appeals denied Petitioner's delayed application for leave to appeal "for lack of merit in the grounds presented" on June 4, 2019. (6/4/19 Mich. Ct. App. Ord., ECF No. 10-14, PageID.999.) Petitioner filed a motion for reconsideration which was similarly denied on July 17, 2019 (7/17/19 Mich. Ct. App. Ord., ECF No. 10-14, PageID.984.)

On May 12, 2020, Petitioner filed a *pro se* motion for relief from judgment, raising two issues: (1) "[t]he court failed to provide procedural due process when it allowed an unconfirmed urine test results [sic] to go outside the Cobbs agreement," and (2) "[t]he court allow [sic] a sentence enhancement to stand even though the prosecutor failed to comply with M.C.L. 769.13(1)(2)." (Pet. 5/12/20 Mot., ECF No. 10-12, PageID.969–70.) The circuit court denied Petitioner's motion on June 3, 2020. (6/3/20 Cir. Ct. Ord., ECF No. 10-13, PageID.982.) The circuit court explained that, as to the issue of procedural due process, Petitioner admitted at the time of sentencing that he was aware that he was not to violate the terms of his bond between the time of his plea and sentencing, did not request an independent analysis of the urine sample at the time of sentencing, making his claim untimely, and did not offer a denial that he had tested positive. (*Id.*) The circuit court also explained that the sentencing enhancement was included within the original complaint, which was sufficient to provide Petitioner with notice. (*Id.*)

Thereafter, Petitioner filed a *pro se* application for leave to appeal to the Michigan Court of Appeals. (Pet'r's 2d Appeal Br., ECF No. 10-17, PageID.1587–1608.) On August 31, 2020, the Court of Appeals denied Petitioner's application for leave to appeal "because defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." (8/31/20 Mich. Ct. App. Ord., ECF No. 10-17, PageID.1576.) Petitioner's application for leave to appeal to the Michigan Supreme Court was similarly denied on February 4, 2021. (2/4/21 Mich. Sup. Ct. Ord., ECF No. 10-21, PageID.1847.)

## II.  AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in

state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a

habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the

underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Ground I: Forfeiture of Sentencing Agreement

Petitioner contends that the trial court violated Petitioner's due process rights "where the trial court unilaterally concluded that Defendant violated the terms of his pretrial release without a hearing." (Pet., ECF No. 1, PageID.6.) In support of each of his grounds for habeas relief, Petitioner relies upon the arguments set forth in his brief on appeal to the Michigan Court of Appeals. (*Id.*, PageID.8.) In that brief, Petitioner set forth six arguments in support of Ground I: (1) the trial court's December 12, 2017, order modifying Petitioner's bond conditions, which included the bond condition found to be violated, was improperly served under Michigan law and, as a result, was invalid (Pet. Br., ECF No. 2-2 PageID.53–54); (2) because the bond condition was invalid, the requirement that Petitioner submit to a urine test on the morning of sentencing was a violation of Petitioner's Fourth Amendment rights (*id.*, PageID.54); (3) the trial court violated Petitioner's Fifth Amendment right to be free from self-incrimination when it indicated that Petitioner had tested positive for THC (*id.*, PageID.58); (4) under the Michigan Court Rules, Petitioner should have been permitted to withdraw his plea (*id.*, PageID.60–61); (5) the trial court considered "information from external sources" and relied upon the judge's own experience in finding that Petitioner violated the terms of his bond (*id.*, PageID.61–62); and (6) due process required that Petitioner be afforded a hearing to contest his bond violation (*id.*, PageID.63–64).

The Court finds Petitioner's arguments unpersuasive and, for the most part, not cognizable on habeas review.

### 1.      Validity of Bond Order

Petitioner's first, second, and fourth arguments each rely upon this Court first finding that the December 12, 2017, bond order was invalid under Michigan law. It cannot do so.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Petitioner's invitation to assess whether the prosecution or the trial court complied with state law in serving the December 12, 2017, bond order "is not part of a federal court's habeas review of a state conviction." *Id.* at 67. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67–68.

On direct appeal, the state court considered Petitioner's argument that the bond order was invalid under Michigan law. It denied leave to appeal "for lack of merit in the grounds presented." (6/4/19 Mich. Ct. App. Ord., ECF No. 10-14, PageID.999.) The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, the premise of first, second, and fourth Petitioner's arguments, that the bond order was invalid—a state law issue—is conclusively resolved against Petitioner. Because the December 12, 2017, bond order was valid under Michigan law, Petitioner is not entitled to habeas relief on these arguments.

### 2.      Fourth Amendment Violation

Additionally, Respondent argues that Petitioner's Fourth Amendment claim is not cognizable on federal habeas review. (ECF No. 9, PageID.558.) The Court agrees. In *Stone v.*

*Powell*, 428 U.S. 465 (1976), the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *See Id.* at 494; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012). For the rule set forth in *Stone* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the instant case, Petitioner cannot satisfy either prong of the *Stone* standard. It is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g.*, *People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g.*, *Agee v. White*, 809 F.2d

1487, 1490 (11th Cir. 1987) (discussing that habeas review was not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies even if the federal court deems the state court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)). Here, Petitioner has not alleged any facts showing that the state's mechanism has broken down. Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his Fourth Amendment claim is barred on habeas review.

Additionally, even if Petitioner's Fourth Amendment argument were cognizable on habeas review, it lacks merit. Petitioner contends only that "*absent a validly imposed bond condition*," the urine test result would violate Petitioner's Fourth Amendment rights. (ECF No. 2-2, PageID.54) (emphasis added). He never contends that a search pursuant to a valid court order constitutes a Fourth Amendment violation and offers no argument that would even suggest that the decision of the state court on this set of facts resulted in a decision contrary to or an unreasonable application of clearly established Supreme Court precedent.

Moreover, the Supreme Court has held a "search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte,* 412 U.S. 218, 222 (1973). Petitioner requested and was permitted to remain out on bond between the time of his plea and sentencing on the condition that Petitioner abide by the terms of his bond. The record plainly demonstrates that Petitioner agreed to those terms, which included drug testing. For each of the foregoing reasons, Petitioner is not entitled to relief based upon an alleged Fourth Amendment violation.

### 3.      Fifth Amendment Violation

Petitioner's claim that the court violated Petitioner's Fifth Amendment rights by indicating that Petitioner had tested positive for THC also lacks merit. "The Fifth Amendment by its terms prevents a person from being 'compelled in any criminal case to be a witness against himself,'"

including at the time of sentencing. *Mitchell v. United States*, 526 U.S. 314, 327 (1999) (quoting U.S. Const. amend. V). However, nothing within the record would indicate that Petitioner was compelled to testify against himself, and Petitioner offers no Supreme Court precedent to support the proposition that merely posing a question during sentencing equates to unconstitutional compulsion. The state court concluded that Petitioner's Fifth Amendment claim lacked merit and Petitioner fails to establish that the state court's decision was contrary to or an unreasonable application of clearly established federal law.

### 4.      Withdrawal of No-Contest Plea

Petitioner argues that the state court should have permitted Petitioner the opportunity to withdraw his plea for "good cause" under Michigan law. (ECF No. 2-2, PageID.60–61.) However, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67–68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Thus, Petitioner's claim that the state court failed to abide by the Michigan Court Rules in denying Petitioner the opportunity to withdraw his plea is not cognizable on habeas review. Indeed, the state court of appeals' determination that Petitioner's claim regarding plea withdrawal has no merit is binding on this Court. *See Wainwright*, 464 U.S. at 84; *see also Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

There is no parallel federal constitutional right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794–95 (6th Cir. 1991). Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his plea is not reviewable in habeas corpus.

To the extent argued, Petitioner also fails to demonstrate that his no-contest plea was unknowing or involuntary as would be required to bring a cognizable claim for habeas relief. Under Michigan law, a no-contest plea "has the same consequences as a guilty plea." *People v. Tomlinson*, 50 Mich. App. 655, 657, 213 N.W.2d 803 (1973). The test for determining a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and several requirements must be met. The defendant pleading guilty must be competent, *see id.* at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or ... mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962)

17

("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267–68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Petitioner does not contend that he was coerced into entering his no-contest plea or that he lacked the advice of competent counsel. Rather, he implies that was unaware at the time that he entered his plea that the trial court would refuse to follow the sentencing recommendation based upon Petitioner's positive drug test. The record belies Petitioner's claim.

When a state defendant brings a federal habeas petition challenging the intelligence of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.2d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court

are entitled to a presumption of correctness); *Blackledge*, 431 U.S. at 73 (finding that a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Here, the record demonstrates that Petitioner agreed to enter pleas of no contest to three offenses: one count of CSC-III in Case No. 17-336-FC, one count of CSC-III in Case No. 17-337-FC, and one count of AGBH in Case No. 17-2497-FC, as a second habitual offender, to be capped at 8-1/2 years, in exchange for the dismissal of the remaining charges. (5/10/2018 Plea Hr'g Tr., ECF No. 10-8, PageID.909–12.)

The type of plea agreement entered into here was authorized by the Michigan Supreme Court in *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993). In *Cobbs*, the Michigan Supreme Court held that a trial court judge may preliminarily indicate the appropriate length of sentence, if the defendant pleads guilty or no-contest; if the judge later determines that the sentence must exceed the preliminary evaluation, the defendant has a right to withdraw the plea. *See id.*; Mich. Ct. R. 6.310(B)(2)(b); *Wright v. Lafler*, 247 F. App'x 701, 703, n.1 (6th Cir. 2007). However, a defendant's right to withdraw a plea is not absolute. *People v. Kean*, 516 N.W.2d 128, 129 (Mich. Ct. App. 1994). If a defendant violates the terms of his plea agreement after pleading guilty, he waives his right to withdraw his guilty plea if the judge fails to follow the sentencing recommendation contained within the plea agreement. *Id.* The record indicates that Petitioner was well-aware of this possibility.

At his plea hearing, Petitioner testified under oath that he understood that he needed to follow all the terms of his bond and that, if he did not, the court was not required to go along with the sentencing recommendation contained within the plea agreement. (5/10/2018 Plea Hr'g Tr., ECF No. 10-8, PageID.922–23.) And, as discussed above, it has been conclusively established that the terms of Petitioner's bond included that "[a]ny positive test will result in a revocation of bond,"

19

(12/13/17 Bond Ord., ECF No. 10-14, PageID.1041.) The transcript of Petitioner's plea hearing also shows that Petitioner was aware of the maximum statutory penalties for each charge. (*Id.*, PageID.915–16.)

Petitioner's assertion that he was personally unaware of the terms of the December 13, 2017, bond order finds no evidentiary support. At sentencing, Petitioner admitted that he understood that, as a condition of his bond, he would be drug tested and that testing positive for THC was a violation of his bond and placed the plea agreement in jeopardy. (7/9/18 Sentencing Hr'g Tr., ECF No. 10-9, PageID.938–39.) Based upon his extensive interactions with Petitioner throughout the three criminal cases, the trial court judge concluded that Petitioner was well-aware of what he was "supposed to do and not supposed to do" as it related to drug use and testing. (8/6/2018 Motion Hr'g Tr., ECF No. 10-10, PageID.951–52.) Petitioner fails to provide this Court with clear and convincing evidence otherwise. *See* 28 U.S.C. § 2254(e)(1).

Therefore, it comes as no surprise that, at the time of sentencing, the trial court concluded that Petitioner had violated the terms of his bond by testing positive for THC. (7/9/18 Sentencing Hr'g Tr., ECF No. 10-9, PageID.938.) The trial court was provided with a positive urine test result performed by Community Corrections, and Petitioner admitted to being around individuals using THC. (*Id.*) Relying on the positive test result, Petitioner's statement, and the trial court judge's extensive experience, the trial court found Petitioner's argument that he did not use but was simply around people who had used marijuana to be incredible. (8/6/2018 Motion Hr'g Tr., ECF No. 10-10, PageID.952.) Petitioner has wholly failed to rebut the trial court's findings by clear and convincing evidence as would be required to overcome the AEDPA's presumption of correctness. *See* 28 U.S.C. § 2254(e)(1).

Because Petitioner was fully aware of the terms of his plea agreement and, nonetheless breached the terms of that agreement by violating the bond order, Petitioner is not entitled to enforcement of the sentencing bargain nor is he entitled to withdraw his no-contest plea. Petitioner is not entitled to habeas relief on this argument.

### 5.    Consideration of Information from "External Sources"

Petitioner claims that the trial court improperly considered facts from "external sources" in determining that Petitioner had violated the terms of his bond, including relying upon hearsay evidence of a positive drug test and the judge's own experience. (ECF No. 2-2, PageID.61–62.) He asserts that there was, therefore, insufficient proof that Petitioner had violated the terms of his bond. However, whether the evidence was "sufficient" to demonstrate Petitioner's conduct in violation of his bond as found by the sentencing court is not a constitutional issue.

It is a "long-established principle" that "the constitutional protections afforded defendants at a criminal trial, including confrontation rights, are not available at sentencing proceedings to limit the court's consideration of the background, character and conduct of the defendant." *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc). The Sixth Circuit described the scope of constitutional protection at sentencing as follows:

> But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial." *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc). "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. 241, 246 (1949). That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant— if not essential—to [the judge's] selection of an appropriate sentence." *Id*. at 247. An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham–Wright*, 715 F.3d 598, 601 (6th Cir.2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing.

> *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016). In *McMillan v. Pennsylvania*, 477

U.S. 79 (1986),[2] the Supreme Court acknowledged that "sentencing courts have always operated

without constitutionally imposed burdens of proof...." *Id.* at 92 n.8.[3]

Therefore, the rules of evidence do not apply to a sentencing proceeding, Mich. R. Evid.

1101(b)(3), "and due process does not require otherwise . . . ." *United States v. Hamad*, 495 F.3d

241, 246 (6th Cir. 2007); *see also Williams v. People of State of N.Y.*, 337 U.S. 241, 251 (1949)

("The due-process clause should not be treated as a device for freezing the evidential procedure of

---

[2] *McMillan* was overruled in *Alleyne v. United States*, 570 U.S. 99 (2013). *See United States v. Haymond*, 139 S.Ct. 2369, 2378 (2019) ("Finding no basis in the original understanding of the Fifth and Sixth Amendments for *McMillan* and *Harris* [*v. United States*, 536 U.S. 545 (2002)], the [*Alleyne*] Court expressly overruled those decisions...."). The *McMillan* holding that was overruled, however, was the principle that factors implicating mandatory minimum sentences did not require proof beyond a reasonable doubt. The underlying premise from *McMillan* quoted above—that there is no constitutionally required standard of proof to support discretionary sentencing decisions—survived *Alleyne* and, indeed, was effectively highlighted by *Alleyne* when the *Alleyne* Court distinguished mandatory from discretionary sentencing decisions. None of the cases in the line of authority that culminated in *Alleyne*—*Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 536 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005)—suggest that the constitutionally required burden of proof that applies to facts found in support of mandatory maximum or minimum sentences applies to discretionary sentences.

[3] Even the term "burden of proof" can be misleading. As the Supreme Court noted in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), "[c]ontemporary writers divide the general notion of 'burden of proof' into a burden of producing some probative evidence on a particular issue and a burden of persuading the factfinder with respect to that issue by a standard such as proof beyond a reasonable doubt or by a fair preponderance of the evidence." *Id.* at 695 n.20. Generally, the constitution places the burden of production and persuasion on the prosecutor to prove the elements of a charged offense and the standard of persuasion is "beyond a reasonable doubt." There are times, however, where the constitution permits the placement of the burden of production and persuasion on the defendant, for example, with regard to affirmative defenses. It might be less confusing to refer to the required persuasive impact of the evidence as the standard of persuasion rather than the burden of proof.

sentencing in the mold of trial procedure."). The Sixth Circuit has "acknowledged the wide discretion allowed a trial judge in considering the evidence submitted at sentencing," and that "[t]he sentencing court's use of hearsay information has traditionally been almost unlimited." *Silverman*, 976 F.2d at 1508–09 (internal citations omitted).

Due process requires only "that evidence considered at sentencing have 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Johnson*, 732 F.3d 577, 583 (6th Cir. 2013) (quoting *United States v. Moncivais*, 492 F.3d 652, 659 (6th Cir. 2007); citing *Silverman*, 976 F.2d at 1504). "The minimum-indicia-of-reliability standard is a relatively low hurdle that asks only that *some* evidentiary basis beyond mere allegation . . . be presented to support consideration of such conduct as relevant to sentencing." *Id.* (emphasis in original) (internal citation and quotation marks omitted). That indicia of reliability was certainly present in an independent urine test performed pursuant to the bond conditions imposed by the circuit court and agreed upon by the parties. Petitioner does not contend otherwise. While Petitioner argues that he should have been permitted to challenge the test result on principle, he offers nothing that would indicate that the results were incorrect. Indeed, as the circuit court explained in denying Petitioner's motion for relief from judgment, "at the time of sentencing the defendant did not offer a denial testing positive but offered a reason for testing positive." (6/3/20 Cir. Ct. Ord., ECF No. 10-13, PageID.983.)

Additionally, the Supreme Court has held that a trial judge's reliance on his own experience does not render a sentencing proceeding unfair. *See Barclay v. Florida,* 463 U.S. 939, 948–51 (1983) (rejecting claim challenging trial judge's references to his own World War II experience). As the Supreme Court has explained:

> We have never suggested that the United States Constitution requires that the sentencing process should be transformed into a rigid and mechanical parsing of

23

statutory aggravating factors. But to attempt to separate the sentencer's decision from his experiences would inevitably do precisely that. It is entirely fitting for the moral, factual, and legal judgment of judges and juries to play a meaningful role in sentencing.

*Id.* at 950–51.

In the present case, the sentencing court considered information that was reliable insofar as it was derived from a urine test performed by Community Corrections and Petitioner's own acknowledgment that he was exposed to THC sufficient to test positive for the drug. Based on this information, accompanied by the judge's own experience, the sentencing court concluded that a sentence of 14 years to 22 years, 6 months was appropriate. The sentencing court was permitted to make this determination, and Petitioner has not established any violation of his due process rights.

### 6.      Right to a Hearing

Petitioner asserts that due process required that Petitioner be afforded a hearing to determine whether Petitioner had violated the terms of his bond. (ECF No. 2-2, PageID.63–64.) However, Petitioner acknowledges that "no current cases appear to address this issue." (ECF No. 2-2, PageID.62.) Thus, he cannot say that the state court's denial of his claim was contrary to Supreme Court precedent or an unreasonable application of federal law to the facts.

It is firmly established that the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial." *Silverman*, 976 F.2d at 1511. Nonetheless, a sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also Tucker*, 404 U.S. at 447; *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990). To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information. *United States v.*

*Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v. Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992), *aff'd* 989 F.2d 499 (6th Cir. 1993). Petitioner makes no such showing.

Petitioner claims that he was entitled to a hearing. He fails to recognize that he was afforded that opportunity, albeit not in the manner in which he would have liked. Petitioner was on notice that he was tested for drugs prior to the sentencing hearing pursuant to the terms of his bond. Petitioner then had a sentencing hearing before the state trial court with an opportunity to contest the positive urine test and the sentencing decision. Petitioner specifically responded to questions by the judge. In short, Petitioner fails to establish that the state court, in imposing Petitioner's sentence, relied upon materially false or inaccurate information which he had no opportunity to correct. Therefore, habeas relief is not warranted on this claim.

### B. Grounds II through VIII: Incorrect Scoring of Offense Variables

In Grounds II through VIII, Petitioner challenges his sentence, claiming that the trial court improperly scored various Offense Variables, in contradiction to recognized interpretations under state law. Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings, *see Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (discussing that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (holding that the alleged violation of state law with respect to sentencing is not subject to federal habeas relief). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also Tucker*, 404 U.S. at 447; *Townsend*, 334 U.S. at 741. To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447.

In his arguments regarding each challenged offense variable, Petitioner reviews the facts before the trial court and then argues that the court erred when applying the guidelines to those facts. The crux of Petitioner's challenge, therefore, is not that the sentencing court relied on materially false facts, but that the court reached the wrong scoring conclusions based on the facts. Thus, as presented, Petitioner's challenges do not raise a federal constitutional claim, they raise state law claims that are not cognizable on habeas review. Moreover, with regard to Petitioner's contention that the court applied the scoring guidelines incorrectly, this Court is bound by the Michigan Court of Appeals' determination that Petitioner's challenges, as a matter of state law, "lack . . . merit." (6/4/19 Mich. Ct. App. Ord., ECF No. 10-14, PageID.999.)

### C.       Ground IX: Ineffective Assistance of Counsel

Petitioner contends that he was denied effective assistance of counsel because defense counsel did not object to Petitioner's own statements on the record regarding Petitioner's bond violation. (ECF No. 2-2, PageID.69.) In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. In the context of a sentencing proceeding, Petitioner must demonstrate that there exists a reasonable probability that, but for counsel's errors, he would have received a more favorable sentence. *See, e.g.*, *Stumpf v. Robinson*, 722 F.3d 739, 753–54 (6th Cir. 2013) (to prevail on a claim that counsel rendered ineffective assistance at sentencing, petitioner must demonstrate that there exists a reasonable probability that absent counsel's errors he would have received a different sentence).

A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. State of La.*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The Court cannot conclude that defense counsel's decision not to object to Petitioner's own statement was outside of the range of professionally competent assistance. Petitioner tested positive for the presence of THC in an independent urinalysis. That alone was a violation of Petitioner's bond conditions. In the face of that positive test result, it would not be unreasonable for counsel to conclude that allowing Petitioner to offer an explanation may serve to mitigate the harm. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel's pursuit of it was professionally unreasonable.

Moreover, because the positive test result was alone sufficient to violate the terms of Petitioner's bond, Petitioner also fails to demonstrate that an objection by Petitioner's attorney would have reasonably resulted in a different sentence. Petitioner, therefore, is not entitled to habeas relief with respect to his assertion of ineffective assistance.

### D.        Grounds X: Failure to Confirm Drug Screening

In his tenth ground for habeas relief, Petitioner again contends that the trial court violated Petitioner's right to procedural due process in relying upon the "unconfirmed urine test result."

(Pet., ECF No. 1, PageID.7.) As discussed above, the trial court's use of this independent test at sentencing does not amount to a constitutional violation. Petitioner is not entitled to habeas relief.

### E.        Ground XI: Failure to Comply with State Sentencing Enhancement Law

In his eleventh ground for habeas relief, Petitioner contends that the circuit court improperly applied the habitual offender sentencing enhancement even though the prosecution failed to comply with Mich. Comp. Laws § 769.13(1)(2), (Pet., ECF No. 1, PageID.7), which governs the filing and service of a notice of intent to seek a sentencing enhancement. As support for this argument, Petitioner adopts by reference the argument set forth in his motion for relief from judgment. (Pet'r's Br., ECF No. 2, PageID.30.) There, he claimed that the prosecution did not file or serve the defense with notice that Petitioner would be sentenced as a second habitual offender and, as a result, re-sentencing is required. (ECF No. 2-3, PageID.109–11.) In response, Respondent argues that Petitioner's claim is non-cognizable and without merit. The Court agrees.

As discussed above, the extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). Petitioner's attack on the prosecution's filing and service of the habitual offender sentencing enhancement does not raise a federal constitutional issue. Certainly, due process mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him. *See*, *e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)).

Petitioner's attack is not focused on a lack of notice, it is focused on the prosecutor's purported failure to comply with the state statutory requirements. Petitioner's invitation to assess

whether the prosecution complied with state law "is not part of a federal court's habeas review of a state conviction." *Id*. at 67.

Setting aside issues of filing or service, it is clear that Petitioner's plea was founded on a complete understanding of the sentencing consequences he faced. It is well-settled that a plea cannot be voluntarily and intelligently made where a defendant does not receive "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Smith*, 312 U.S. at 334. Thus, to find a constitutionally valid plea, the defendant must understand the direct consequences of his plea. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153–54 (6th Cir. 1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991).

Here, Petitioner was fully informed of the sentencing enhancement and its potential consequences at the time that he entered his plea. Petitioner does not contend otherwise. During the plea hearing, Petitioner affirmed under oath that he understood the terms of the plea agreement would include Petitioner's status as a second habitual offender and the resultant maximum penalties for each charge. 5/10/2018 Plea Hr'g Tr., ECF No. 10-8, PageID.914–16.) There was nothing unknowing or unintelligent about Petitioner's decision to plead no contest in the face of the sentencing enhancement. Therefore, Petitioner's claim does not implicate his due process rights. He is, again, not entitled to habeas relief.

## IV.    Motion for Copies

Finally, Petitioner has filed a motion for copies "of [his] lower court transcripts and brief filed in [this matter] on or about March 28, 2022." (ECF No. 13, PageID.2234.) A review of the record does not reveal any document filed by Petitioner in or around March 2022. To the extent that Petitioner refers to his "memorandum of law in support of Petitioner writ of habeas corpus," received by the Court on January 24, 2022 (ECF No. 2), the Court notes that Petitioner's memorandum is minimal, mainly relying upon the arguments set forth in Petitioner's state court filings, which are attached as appendices A, B, and C (ECF No. 2-1).

Litigants generally bear their own litigation expenses. *Smith v. Yarrow*, 78 F. App'x 529, 544 (6th Cir. 2003). The Sixth Circuit Court of Appeals has concluded that an indigent party is not entitled to free copies of his own pleadings:

> Although the petitioner was granted leave to proceed in the district court as a pauper, that status waives only "prepayment of fees and costs and security . . . ." 28 U.S.C. § 1915(a). It does not give the litigant a right to have documents copied and returned to him at government expense.

*In re Richard*, 914 F.2d 1526, 1527 (6th Cir. 1990). Therefore, the Court will deny Plaintiff's request for free copies.

## V.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court

30

in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that ... jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although the Court concludes that Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Thus, the Court does not certify that an appeal would not be taken in good faith.

## **CONCLUSION**

The Court will enter an order and judgment denying Petitioner's motion for copies (ECF No. 13), denying the petition because Petitioner has failed to raise a meritorious federal claim, and denying a certificate of appealability.

Dated: _____December 20, 2023_____          _____/s/ Robert J. Jonker_____
                                            Robert J. Jonker
                                            United States District Judge